On September 21, 1941, Mabel Nappier sustained a fracture of her left ankle. She was then living in a small dwelling house owned by John Zagone and designated as Municipal No. 810 1/2 Adams Street, Monroe, Louisiana, her occupancy therein being that of a sub-tenant.
In this suit directed against such owner Mabel Nappier asks an award of damages for her injury, claiming and alleging that it occurred about 7:30 o'clock of the morning of the above mentioned date when the decayed front steps of the dwelling broke as she was ascending them.
Defendant denies the breaking of the steps, with resulting injury to plaintiff; and he affirmatively avers that she was injured while off his premises and was brought there in an automobile shortly after the occurrence.
A trial of the merits resulted in a judgment rejecting the demands of plaintiff and dismissing her suit; and she appealed.
The controversy presents only a factual issue, it being whether or not Mabel Nappier was injured on the rented premises belonging to defendant as she claims.
Plaintiff testifies that the front steps of her dwelling broke, as she was climbing them, throwing her to the ground and fracturing her ankle; and that she was picked up by a friend, carried into her house, and later removed to a hospital. This version of the accident and injury is given by a number of other colored people appearing in her behalf.
However, one of plaintiff's witnesses, who lived next door and was asked to call a doctor, states that she used the front steps of plaintiff's house on at least four different occasions on the day of and following the alleged accident and at no time noticed the claimed broken place.
Defendant testifies positively that he investigated the steps a day or two after the mentioned date of September 21, 1941, and found them to be in good condition. Furthermore, he offers as witnesses in his behalf several members of the colored race who say that plaintiff received her injury during the early morning of that date while at a restaurant located some distance from her dwelling, it occurring when her husband, with whom she was not then living, struck her following a quarrel and knocked her to the floor; and that immediately thereafter she was placed in an automobile and transported to her home.
It is to be noticed that a direct and irreconcilable conflict exists between the testimony of plaintiff and her witnesses and that furnished by the defense; and that falsifying on a large scale has taken place.
The commission of perjury was so obvious to the district judge that he, following the trial, referred the entire matter to the grand jury and withheld decision in the case until the investigation had been completed. Thereafter he concluded, as his written opinion shows, that plaintiff had failed to prove her case by a preponderance of the evidence.
From our close study of the record we cannot say that there is manifest error in the trial judge's resolving the presented factual issue in favor of defendant. He was required, in determining that issue, to pass upon the credibility of the witnesses; and certainly he was in a much better position to do that than are we. *Page 22 
It is true that certain circumstances disclosed by the record favor the version given by plaintiff, but there are others revealed which are in corroboration of the testimony of the defense witnesses. A discussion of these circumstances would benefit no one and will not be indulged in by us.
The judgment, for the reasons assigned, is affirmed.